UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

_____ )
                                )
UNITED STATES OF AMERICA,        )
                                )
                                )  5:18-CR-00170-D-1
            vs.                  )
                                )
COURTLAND BARNES,                )
            Defendant.           )
_____ )


JANUARY 29, 2019
SENTENCING HEARING
BEFORE THE HONORABLE JAMES C. DEVER III
UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Government:


MELISSA B. KESSLER, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
New Bern Avenue, Suite 800
Raleigh, North Carolina  27601


On Behalf of the Defendant:


JOSEPH CRAVEN, FEDERAL PUBLIC DEFENDER
Federal Public Defender's Office
150 Fayetteville Street, Suite 450
Raleigh, North Carolina  27601


AMY M. CONDON, CRR, RPR, CSR
Official Court Reporter
United States District Court
Raleigh, North Carolina
Stenotype with computer-aided transcription

1      (**Tuesday, January 29, 2019, commencing at 10:35 a.m.**)

2                    **P R O C E E D I N G S**

3           THE COURT:  We'll next take up the sentencing of

4    Courtland Barnes.

5        (Pause in the proceeding.)

6           THE COURT:  Good morning, Mr. Craven and Mr. Barnes.

7    Is the defense ready?

8              MR. CRAVEN:  Yes, sir, we are.

9           THE COURT:  Good morning, Ms. Kessler.  Is the

10   Government ready?

11             MS. KESSLER:  Yes, the Government is ready.

12          THE COURT:  At this time, I ask that Mr. Barnes be

13   sworn or affirmed.

14       (The defendant, Courtland Barnes, was duly sworn.)

15          THE COURT:  Mr. Barnes, do you understand that having

16   been sworn, that your answers to my questions are subject to

17   the penalty of perjury; and if you were to lie to me, you could

18   be prosecuted for perjury or for making a false statement, sir?

19             THE DEFENDANT:  Yes, sir.

20          THE COURT:  Have you taken any kind of medicine or

21   any other substance in the last 48 hours that would affect your

22   ability to hear and understand this proceeding?

23             THE DEFENDANT:  No, sir, I have not.

24          THE COURT:  Do you know why you're here today?

25             THE DEFENDANT:  I do, sir.

1          THE COURT:  Mr. Craven, do you have any reason to

2   doubt Mr. Barnes' competence to go forward today?

3          MR. CRAVEN:  I do not, Your Honor.

4          THE COURT:  Does the Government have any reason to

5   doubt Mr. Barnes' competence to go forward today?

6          MS. KESSLER:  No, Your Honor.

7          THE COURT:  Based on Mr. Barnes' answers to my

8   questions, my observations of Mr. Barnes, and the answers from

9   counsel, I find that he is competent.

10         Sir, you're here today having entered a plea of

11  guilty to 11 charges.  Counts 1 through 10 charge receipt of

12  child pornography.  The charge in Count 11 is possession of

13  child pornography.  You entered a plea of guilty to those

14  charges in this court.

15         In light of some cases from the Supreme Court of the

16  United States, including the *Booker, Rita, Gall, Kimbrough,*

17  *Spears* and *Nelson* cases, the Guidelines are no longer

18  mandatory; they're advisory.

19         Nevertheless, in accordance with those cases and

20  numerous cases from the Fourth Circuit interpreting them,

21  including the *Carter, Pauley,* and *Evans* cases, a sentencing

22  Court still must take into account the now-advisory guidelines.

23         The Court does this by initially making findings of

24  fact and calculating an advisory guideline range.  I'll then

25  consider any motion that might be made that might move the

1   range either up or down.  I'll then consider all arguments that

2   Mr. Craven makes here in court and the ones he's already made

3   in your sentencing memorandum.  I'll consider any statement

4   you'd like to make, sir.  I'll consider any victim allocution,

5   and I'll consider the arguments of the Assistant United States

6   Attorney.

7            I'll then determine your sentence and announce it

8   here in court today.  That'll be the process we'll follow.

9            Mr. Craven, did you receive a copy of the presentence

10  report?

11           MR. CRAVEN:  Yes, Your Honor, we did.

12           THE COURT:  Mr. Barnes, did you receive a copy of

13  that report, sir?

14           THE DEFENDANT:  Yes, sir, I did.

15           THE COURT:  Did you speak with Mr. Craven about that

16  report?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  At this time, the Court directs that the

19  presentence report be placed in the record under seal.

20           In accordance with Rule 32 of the Federal Rules of

21  Criminal Procedure, the Court accepts as accurate the

22  presentence report, except as to matters in dispute as set

23  forth in the addendum.

24           I have reviewed the entire report, including the

25  addendum.  The addendum indicates there is no objections to the

1  report from either the Government or the defense.

2          Is it still the case, no objections to the report

3  from the defense?

4          MR. CRAVEN:  Yes, Your Honor, that's correct.

5          THE COURT:  Is that correct, Mr. Barnes?

6          THE DEFENDANT:  I did not hear.

7          THE COURT:  There is no objections to the report,

8  correct?

9          THE DEFENDANT:  Oh, no, sir.

10          THE COURT:  No objections to the report, correct, Ms.

11  Kessler?

12          MS. KESSLER:  Correct, Your Honor.

13          THE COURT:  The total offense level is 34, the

14  criminal history category is II, the advisory guideline range

15  is 168 to 210 months.

16          Does the Government object to that advisory guideline

17  range?

18          MS. KESSLER:  No, Your Honor.

19          THE COURT:  And then Count 11 is capped at 120.  Does

20  the Government agree with that advisory guideline range?

21          MS. KESSLER:  Yes, Your Honor.

22          THE COURT:  Does the defense agree with that advisory

23  guideline range?

24          MR. CRAVEN:  Yes, Your Honor.  We have no legal

25  objection to that range.

```
 1          THE COURT:  All right.  I'll hear first from
 2   Mr. Craven, I'll then hear from Mr. Barnes, I'll then hear
 3   victim allocution, I'll hear from Ms. Kessler, and then I'll
 4   give Mr. Craven the last word.
 5          MR. CRAVEN:  Your Honor, before I forget, I inherited
 6   this case from Suzanne Little, and I think there was some
 7   confusion once I took over the case about the issue of
 8   restitution, and so only recently did I learn that there was a
 9   number of outstanding requests.  And I've been in communication
10   with Ms. Kessler about that and, Your Honor, we have resolved
11   some of those.
12          There are, I think, three groups of requests by
13   victim lawyers, and each of those lawyers represents, I think,
14   a series of individuals or maybe a handful of victims.  And I
15   received back word from one of those lawyers and we've resolved
16   that issue.  There may not be a need now to report that to the
17   Court, but, Your Honor, I did want to say that we're working on
18   the issue of restitution.  As soon as I hopefully hear back
19   from some of the other lawyers, we will be able to report back
20   to the Court.
21          THE COURT:  Okay.
22          MR. CRAVEN:  So, Your Honor, if we can ask for I
23   think 90 days, that would be --
24          THE COURT:  I would ask you both to make a note and
25   hopefully get back to me sooner.  We try and track those as
```

1  best we can, but I have 900 cases, and I know you have less

2  than that.

3          MR. CRAVEN:  Well, I'm glad I don't have 900.  And

4  yes, sir, we'll try to do that.

5          MS. KESSLER:  Certainly, Your Honor.

6          THE COURT:  Thank you.

7          MR. CRAVEN:  Your Honor, in terms of this case, I've

8  had a lot of these child pornography cases over the years.  I

9  know you have, too.  We've had a number of them together.  And

10  I feel like from that experience, I have a decent amount of,

11  sort of, knowledge and information about them.

12          I understand the wrongfulness of child pornography.

13  I understand the abuse to the victims by the continued viewing

14  of it, even if the person had nothing to do with manufacturing

15  it.  I understand how it affects the victims, and I feel bad

16  about that.  Judge, I even understand the psychology behind

17  some of the offending and behind what drives some of these

18  individuals to either participate, in whatever form, with child

19  pornography.

20          Judge, what I don't understand is the huge, long

21  custodial sentences for first-time, noncontact, no hands-on

22  possession and receipt of child pornography offenders, and I

23  think that's what we have here.

24          I'll take just a minute as an aside to talk about the

25  distinction between possession and receipt.  Possession, of

course, doesn't have a mandatory minimum; it has a base offense
level of 18. Receipt has a five-year mandatory minimum, as you
know, and a base offense level of 22. But from a culpability
standpoint, from an action standpoint from Mr. Barnes and other
clients in his shoes, I don't know that the activity is any
more egregious to have received something.

When you think about it, in order to possess
something I must -- a logical prerequisite is that I received
whatever that contraband is with one exception, and that's if I
manufactured it, which, in this context, of course, is worse.

I've had numerous conversations with other AUSAs --
not Ms. Kessler yet, but I'm sure we might have it at some
point in the future -- as to explaining to me the difference
from a culpability standpoint. I understand that Congress has
armed the Department of Justice with different avenues to go
after defendants with, and Joe Citizen in me is not bothered by
that, but there really is no distinction from a culpability
standpoint and from a conduct standpoint. And without that
four-point difference, Mr. Barnes' range I think would be 108
to 135.

So, Judge, when I think about all the cases that I've
had over the years, and when I sit in the courtroom and hear
other cases that have gone on or I compare them to other cases,
I have -- I sort of get this rhetorical what-are-we-doing type
question that just repeats itself in my mind.

 1          Judge, I recently had a material support to a

 2     designated foreign terrorist organization case and was

 3     surprised to learn that the statutory maximum in that case is

 4     15 years.  My particular client recently received seven.

 5          Looking at other cases, we see these Hobbs Act

 6     robberies, we could have these young 19, 20-year-old defendants

 7     with either a brandishing or a discharging 924(c) in a Hobbs

 8     Act robbery may be facing less time than Mr. Barnes.

 9          Even now with the First Step Act year in stacking,

10     maybe two, five-year 924(c)s in the robbery we may get less

11     time.

12          You can flip in the Guidelines and it's really

13     telling.  You can look in there and there are very few things

14     that produce high numbers like the child pornography

15     guidelines.  Second-degree murder produces a base offense level

16     of 38.  Well, Mr. Barnes before acceptance was 37.  When we

17     look at the drug weights between level 36 and 38, we're talking

18     about 90 kilos of heroin.  You know, 45 kilos of meth, 36 kilos

19     of fentanyl, 450 kilos of cocaine.  I mean, these are

20     astronomical cartel-level type drug numbers.

21          Even the most serious criminal sexual abuse base

22     offense level starts at 38.  So we've got these child

23     pornography guidelines that have just -- they are right up

24     there with all these other of the most serious offenses.

25          And when I compare Mr. Barnes, for example, to the

1   young defendant, Mr. Alston, who was here before us, and a lot

2   of these other guys who come into this criminal court with all

3   these other problems and these long criminal histories and just

4   all kinds of garbage and baggage and sort of incorrigible

5   behavior throughout their life, then we have Mr. Barnes, who,

6   but for the instant offense, there really isn't a whole lot bad

7   to say about him; and from a sentencing perspective, they are

8   sort of put on the same pedestal.  There is something not right

9   about that to me.

10          Again, by just about all accounts, I think Mr. Barnes

11  is a good and decent guy.  He was a diligent young man.  He

12  enrolled in the ROTC program in high school.  He had early

13  military training and went into the Army Reserves.  He had a

14  rocky relationship with an older woman, which I think in

15  hindsight was a mistake and everyone can see that; but

16  otherwise, he's done well with his life.

17          He has a pretty decent work history.  Maybe not the

18  fanciest jobs, but he's worked in restaurants.  And you can see

19  at the Cheese Cake Factory where he was making 25, 30-some

20  thousand dollars a year.  I mean, he was doing okay.  Of

21  course, he's also worked in cleaning and lawn care and tobacco

22  and other sort of labor jobs, but he's willing to put in the

23  hard work to work and make a living.

24          He's been described, and it's in the sentencing memo

25  and the character letters, as a good husband, a good father, a

good nephew, a kind person. He has really taken an active role in his autistic son's life. He taught his autistic son how to read, he taught him how to prepare basic meals for himself. He helped get an Individualized Education Plan put in place with the school, which I know takes a lot of work to do that.

So unfortunately, he had this isolated issue, but it is isolated of looking at child pornography. And we also know that Mr. Barnes was abused. He reports being abused as an eight year old and then by an adult male when he was 11. And when we look at those things, in all likelihood that is probably the root cause of what brought Mr. Barnes here, was his own abuse.

So while I know these cases are important and the Government and the Guidelines take them seriously for all the right reasons, because of what it does to victims, we can't just ignore or discount the fact that Mr. Barnes may have been a victim, too, or we're not dealing with the problem in sort of this holistic manner. We're only looking at, well, just because he did something wrong, which may be connected to being a victim, then we sort of ignore it and he's no longer a victim and we're mad at him. We have to understand this as a society and have to find a way to get beyond it because it doesn't seem that we are punishing our way out of the problem with these huge sentences. The problem is rampant and, of course, unlike other contraband, it never goes away once it's consumed.

Judge, he has -- Mr. Barnes has recognized an addiction to pornography, which, again, I think is connected to early viewing with this adult man. He's talked to his wife about it. They were trying to work on it. They were trying to find help in doing it. There is no AA meeting in every neighborhood that someone can go to. It's such a hard problem to have, to voluntarily reach out and receive the treatment for, and it sounds like Mr. Barnes was in the first steps of actually doing that and opening up to his wife about it.

Judge, this is a fairly typical child pornography case. There is no real distinguishing bad factor. And what I mean by that, there is no hands-on offending. There is no chat rooms of trying to rendezvous with other adults making kids available to them. He's not the middle school gym teacher who is also running the after-school program. There isn't something that sort of jumps out at us taking this case out of what, again, is a relatively standard child pornography offense where Mr. Barnes -- and again, I understand the wrongfulness of it -- but was looking at the pictures of someone else's crime.

Your Honor, we cite the statistic in the memo that by 2015, 70 percent of child pornography cases around the country were receiving a below-guideline sentence. We used to -- this is before the *Booker* and *Rita* and *Gall* and variance world that we live in now, but we used to talk a lot more about the heartland of cases.

1          The heartland of these cases receive a
2    below-guideline sentence.  What is Courtland Barnes going to
3    learn in year 13 or 14 that he won't possibly learned in year
4    five or six?  I don't know.

5          There isn't anything in Mr. Barnes' history that
6    concerns us like some of these other guys we see that by this
7    young age have done nothing but commit crimes and have never
8    worked in their life, and so the risk of recidivism here is
9    probably fairly low.

10          But regardless of trying to apportion the exact risk
11   now, Your Honor has the tools and the ability to impose a
12   significant term of supervised release, and I would ask that
13   Your Honor consider giving Courtland Barnes a sentence
14   significantly below the sentencing guideline range and
15   balancing that with the appropriate level of supervised
16   release.  I think that is a recipe for success for not only Mr.
17   Barnes but for society.  Any custodial sentence that he gets
18   will send a major deterrent effect to him, as well as anyone
19   else who is involved with this type of material.

20          So, Your Honor, again, we would ask for a
21   below-guideline sentence and tempered with the appropriate
22   amount of supervised release.

23          THE COURT:  Thank you, Mr. Craven.

24          At this time I'll hear from Mr. Barnes, if you'd like
25   to make a statement, sir.

1    THE DEFENDANT:  Yes, sir.  I just want to say that I

2    am very remorseful for my crime.  I was very ashamed that I was

3    even caught up in these kind of actions, especially having a

4    12-year-old son that I take care of on a regular basis.

5    I'm ashamed that I left my son out there because of

6    my crimes; and like I tell him, you have to accept

7    responsibility for your actions.  I'm always teaching him that

8    you have to take responsibility for what you do.  So when he

9    asked what happened, I let him know that dad did something

10   wrong, so dad has to do what he has to do, dad has to be a man

11   and take responsibility.

12   I hate the fact that I'm losing my wife -- well, I'm

13   not losing her, but I'm leaving her behind.  So I'm really

14   apologetic to her and my family for what they have to go

15   through by me putting myself in this situation.  I want nothing

16   but help in this situation.  I want to get better and past this

17   and I want to be a better person.

18   THE COURT:  Thank you, Mr. Barnes.

19   At this time I'll hear any victim allocution and then

20   I'll hear from Ms. Kessler.

21   MS. KESSLER:  Your Honor, there are no victims

22   present today who wish to allocute, but I will be referring to

23   a victim impact statement that has been submitted in this case.

24   I'd like to begin, first, by asking the Court in this

25   case to sentence Mr. Barnes to a sentence in the guideline

range.  A departure in this case is not appropriate.  And I'll

address Mr. Craven's arguments more specifically in a moment,

but I'd like to talk first about the offense conduct in this

case.

As the PSR indicates, we're dealing with a very large

amount of child pornography.  Almost 4,000 images, almost 900

videos, images and videos containing little girls as young as

two and four years old as paragraph 7 of the PSR indicates.

Also, I'd like to discuss -- paragraph 9 of the PSR

notes that what the Government finds to be a particular

concern; that there were four entirely new videos that were

found on Mr. Barnes' devices that had never been seen before by

the National Center for Missing and Exploited Children.  And

that's -- those victims Homeland Security attempted to

identify, identified two of them.  Neither could indicate who

was the person who asked them to make those videos, but it

is -- so law enforcement doesn't have sufficient evidence to

say that it was Mr. Barnes who made them, but, you know, there

is a limited amount of child pornography -- victims of child

pornography in the universe.  So it's unusual to find new,

never-seen videos and not have them made by the individual, or

that individual is certainly trading at a higher level or

higher pace that would give us concern.  So that's something

that we want to note.

I think Mr. Craven has characterized this as sort of

an average case of receipt and possession of child pornography.
I'm not sure what the average case is. I think that they are
all horrible, they all impact large numbers of victims, they
all deserve to be punished by the guideline range, but
certainly this is a case that gives us extra concern.

Mr. Craven made a point about receipt versus
possession and what is effectively the difference between the
two. Well, the difference between the two from the
Government's perspective is that when receipt is charged, we
have to be able to prove some sort of interaction with the
internet that allows that receipt. And that's the same reason
why receipt and distribution are the same charge - right? - the
same code. So this indicates a step beyond just having the
child pornography. This indicates interacting with the
internet or with someone else in the world to get that child
pornography, and the evidence is clear that Mr. Barnes was
certainly doing that.

He, by his own admission, participated in the
internet, was active on Drop Box, kept child pornography on
Drop Box, gave his user name and log-in information to Drop Box
to other individuals on the internet who were looking for child
pornography. So Mr. Barnes was not someone who just possessed
child pornography. Mr. Barnes was someone who was active in
the trade of child pornography on the internet, which is a
recurring and continuous damage to the victims who are present

1  in those images.

2         In fact, Mr. Barnes was caught by law enforcement

3  because he distributed 20 images to law enforcement on a

4  particular day or across some number of days, and that those

5  images included children as young as 8 and 11 years old.

6         So it's clear that Mr. Barnes was not just a

7  possessor of child pornography, didn't on one occasion receive

8  child pornography; he's a collector of child pornography, and

9  that is by his own admission.

10         In addition -- not present in the PSR but was in the

11  discovery that was Bates stamp and sent to Mr. Craven, in

12  addition, Special Agent Covington is here today to testify if

13  Your Honor would like additional testimony.

14         Special Agent Covington was present at Mr. Barnes'

15  interview where he did say to Special Agent Covington, "I

16  cannot stop.  In the past, I have tried to stop.  I have

17  deleted my collection in the past and have just started

18  downloading it all over again.  I haven't been able to cease

19  downloading child pornography."

20         So that makes clear that Mr. Barnes does have a

21  problem, isn't able to stop victimizing these children and goes

22  against Mr. Craven's assertion that Mr. Barnes is not at risk

23  to recidivate.

24         So I'd like to talk specifically about the sentencing

25  memo and some of the arguments that Mr. Craven has made.

1      I think this characterization of possession of child
2  pornography, receipt of child pornography as not being a
3  serious crime undercuts not only the impact on the victims of
4  child pornography but the congressional intent in making the
5  laws with respect to child pornography.
6      It's not appropriate for the Court to depart just for
7  the sake of departure because this systematic departure
8  undermines the intent of Congress.  It was the original Child
9  Protection Act of 2002 or 2003 that set these minimum
10  guidelines; but, again, Congress came back in the Child
11  Protection Act of 2012 and raised the maximum penalties with
12  respect to receipt and possession.  So we know that it is
13  important to Congress in enacting these laws that possession
14  and receipt of child pornography are strongly punished.  And
15  the reason why is because it is an epidemic and it's an
16  epidemic that victimizes children in a direct way that trading
17  in drugs or terrorism, or some of the other examples that
18  Mr. Craven gave to the Court, don't.  They don't continuously
19  victimize children in the way that receipt and possession of
20  child pornography victimize children.
21      This is something that Congress has further observed
22  when it recently, last year, passed the Vicky and Andy Child
23  Pornography Victim Assistance Act of 2018.  That Act set up
24  some rules for restitution, but really in its essence what it
25  said is it recognized the horrible and recurring victimization

of children who are present in images that are traded on the
internet.

Mr. Craven makes a point that this offense wasn't
hands-on or probably won't become hands-on.  First, I'd like to
say that it's because hands-on sex offenses are so
underreported it's difficult for anyone to say whether or not
someone who receives child pornography goes on to commit
hands-on offenses.  However, what is clear is that Mr. Barnes
is not charged with a hands-on child offense.  He is charged
with receipt and possession and he has the guidelines
applicable to that offense.

But this offense does have a wide-spread impact on
children because it is such an epidemic.  And to that point,
Your Honor, there is a victim in this case.  Her pseudonym is
Vicky.  She's one of the most notorious victims of child
pornography, and her images are widely traded and she is in
this case a victim.

I think that her words in her victim impact statement
are most telling why this crime deserves to be punished in the
guideline range that was -- and with the minimum, maximum
penalties that were developed by Congress.

Vicky says:  My world came crashing down the day I
learned that pictures of me being sexually abused had been
circulated on the internet.  Since then little has changed,
except my understanding that the distribution of these pictures

grows bigger and bigger by the day and there is nothing I can
do about it.  The enormity of this has added to my grief and
pain and has given me paranoia.  I wonder if the people I know
have seen these images.  I wonder if the men I pass in the
grocery store have seen them.  I feel totally out of control.
They are trading around my trauma like treats at a party and it
feels like I am being raped all over again by every one of
them.  I can never feel safe so long as my images are out
there.  Every time they are downloaded, I am exploited again,
my privacy is breached and I feel in danger.

Vicky is representative of the victims in the over
almost 5,000 images and videos found on Mr. Barnes' computers;
and for that reason, Your Honor, a strong sentence within the
guideline range is warranted in this case.

Thank you.

THE COURT:  Anything else, Mr. Craven?

MR. CRAVEN:  Your Honor, just to be clear, there is
no evidence that Mr. Barnes had anything to do with
manufacturing these videos who were never seen, two of the
people were interviewed and there is no evidence that he was
involved in that.

And I didn't -- in either of my sentencing memo or my
spoken words, if I said that this was not a serious crime, I
didn't mean it that way.  It is certainly less serious than
manufacturing or hands-on, but I think it's also worthy of

1  consideration for a variance in light of all these other

2  sentences that we deal with and in light of sending people to

3  prison who are essentially nonviolent offenders with very

4  little criminal history.  So, thank you, Judge.

5          (Pause in the proceeding.)

6          THE COURT:  Mr. Barnes, the Court recognizes its

7  obligation to impose a sentence sufficient but not greater than

8  necessary to comply with the purposes set forth in the statute.

9          I have considered all arguments that Mr. Craven has

10 made on your behalf, both here in court and in the sentencing

11 memo.  I have considered your statement, sir.  I have

12 considered the position of the United States.  I have

13 considered the advisory guideline range.

14         Among other things, I'm to consider the nature and

15 circumstances of the offense and the history and

16 characteristics of the defendant; the need for the sentence

17 imposed to reflect the seriousness of the offense, to promote

18 respect for the law and to provide just punishment; the need

19 for the sentence imposed to deter others who might choose to

20 engage in the criminal behavior that brings you here; the need

21 for the sentence imposed to deter others and to protect the

22 public from further crimes by you; the need for the sentence

23 imposed to provide you with needed educational, vocational

24 training, medical care, other correctional treatment in the

25 most effective manner.

1    The statute lists numerous other factors.  I've
2  considered all those factors, although I won't mention each one
3  individually.

4    As for the nature and circumstances of the offense,
5  you did plead guilty to 10 counts of receipt of child
6  pornography and one count of possession of child pornography.
7  The offense conduct reflected in the counts of conviction
8  occurred in January 2017, April 2017, June 2017, June 2015,
9  December 2015, March 2016 and October 2017.

10    It all is serious conduct.  It did involve ultimately
11  3,839 images and 896 videos.  The description in the PSR is
12  hard to read.  If it's hard to read, it's hard enough to think
13  how it is to live it if you're a child, a real person, a real
14  toddler, a real second grader, a real fifth grader.

15    This is a serious crime, serious crimes because they
16  are real people, every one of them.  Somebody's little boy or
17  little girl who a parent undoubtedly held at one time with all
18  the hopes and dreams that every parent has for any child they
19  bring into the world.  And yet those children -- I realize in
20  terms of discussing seriousness of things -- and you know this
21  because I read the report and Mr. Craven's excellent memo --
22  abuse of a child changes that child forever.  One of the very
23  odd things about human beings is that, at least as far as I
24  know, and I know Mr. Craven's read a lot; maybe there is
25  studies that I haven't read, but I'm not aware in the animal

kingdom any animal that sexualizes a prepubescent animal. Dogs
don't molest puppies; cats don't molest kittens. And yet, we
have human beings who do this.

And again, I know this isn't a production case, but
this is serious because these are real children, every one of
them. So we can't forget that when we think about these cases.

And I've read it and I've read the issues and I've
read the cases. I've read them all. I've read the studies and
I understand, you have the abstract of the statistics
associated with the Guidelines. I don't think, you know, when
we talk about an average case or a heartland case or the notion
that heartland cases that there's a variance. When I look at
sort of the prolonged nature of this conduct and the volume of
production -- I mean, excuse me -- the volume of receipt and
possession, the scope of the victims, and I balance that
against the issues that are raised in the memo about you having
been abused, about your service in the military -- which I
commend you for -- your employment history, your family
upbringing, the issue that there is no evidence that you ever
committed a hands-on child sex offense or attempted to, the
issues associated with trying to balance a sentence that is
sufficient but not greater than necessary from a custodial
perspective with supervised release and finding a sentence
that's sufficient but not greater than necessary, issues
associated with -- I give you credit for your efforts to help

1    your child with the IEP.  That is a challenging process.  I

2    give you credit for the issues associated with your employment

3    history.

4              But this is conduct that took place over a long

5    period of time.  It's a large volume of images and every image

6    involving a real human being, who I am absolutely positive on

7    the day that child woke up didn't imagine that that was the day

8    their life would change forever.  Not only from the abuse, I

9    can't say it any better than the victim statement, the

10   foreverness of it once it gets out on the internet.

11             So if we stop and think it's hard to read, we all

12   better stop and think, How hard is it to live?  And that I

13   think explains part of why the Guidelines are where they are.

14   And I know there is critiques of them and that's fine.

15             I sentence individual cases; and in this case, I

16   don't think a downward variance is appropriate in light of the

17   serious nature of the crimes, the prolonged nature of it, the

18   volume of the images, the need to promote respect for the law,

19   the need to justly punish.

20             I hope Mr. Craven is right that you don't return for

21   your sake and society's sake.  And you certainly have some good

22   things going for you, but having fully considered the entire

23   record in the case, I don't think a downward variance is

24   appropriate for all the reasons I've said.  Courtland Barnes is

25   hereby committed to the custody of the Bureau of Prisons to be

imprisoned for 168 months on Counts 1 through 10 and 120 months on Count 11 to be served concurrently.

Upon release, you'll be placed on supervised release for 10 years. This is 10 years on Counts 1 through 11 to run concurrently.

You'll comply with the standard conditions and the following additional conditions: You'll participate in a program of mental health treatment, you'll submit to a psychosexual evaluation by a qualified professional, you'll participate in sex offender treatment, you'll participate, as directed, in a narcotic addiction treatment program. The report does reflect a marijuana issue. You need to get that under control. You'll submit to physiological testing while on probation. Your residence and employment will be approved by Probation.

You'll not possess any material depicting or describing child pornography or simulated child pornography. You'll comply with the Sex Offender Registration and Notification Act. Probation will have to approve your internet use. I'm not going to prohibit you from using it but that can be monitored by Probation. You're going to be subject to have your computer subject to unannounced searches by Probation. And at the direction of Probation, there can be software to monitor computer use.

You can't possess any counter-forensic tools. You'll

submit to searches of your person, house, residence, with
reasonable suspicion concerning a violation of the conditions
of supervision or unlawful conduct, cooperate in the collection
of DNA, pay a special assessment of $1,100.  I'll hold
restitution open for 90 days.  I'm not imposing a fine.

Having imposed this sentence having fully considered
all the arguments, all the 3553(a) factors -- I do appreciate
the arguments that each lawyer has made here -- I do think I've
properly calculated the advisory guideline range.  I announce
pursuant to *U.S. v. Gomez-Jimenez,* 750 F.3d 370 (4th Cir. 2014)
and *U.S. v. Hargrove,* 701 F.3d 156 (4th Cir. 2012), that I'd
impose the same sentence as an alternative variant sentence if
I have, in any way, miscalculated the advisory guideline range.
This is the sentence sufficient but not greater than necessary
for Mr. Barnes in light of all the 3553(a) factors I've
discussed.

Sir, you can appeal your conviction if you believe
your guilty plea was somehow unlawful or involuntary or if
there's some other fundamental defect in the proceeding that
was not waived by your guilty plea.

You also have a statutory right to appeal your
sentence under certain circumstances, particularly if you think
your sentence is contrary to law.

With few exceptions, any Notice of Appeal must be
filed within 14 days of the judgment being entered on the

docket in your case.  If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.

If you so request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf.

Butner?

MR. CRAVEN:  Please, Your Honor.

THE COURT:  I recommend FCI Butner.  I recommend vocational/educational opportunities.  I recommend intensive substance abuse treatment.  Recommend mental health assessment and treatment.  Recommend sex offender treatment.

Any other recommendations, Mr. Craven?

MR. CRAVEN:  I think that's all.  Thank you.

THE COURT:  Anything else from the Government?

MS. KESSLER:  No, Your Honor.

THE COURT:  I thank counsel for their work here today.  That'll conclude the matter involving Mr. Barnes.

We'll be in recess until 9:00 a.m. tomorrow.

*     *     *

(The proceedings concluded at 11:20 a.m.)

1          UNITED STATE DISTRICT COURT

2          EASTERN DISTRICT OF NORTH CAROLINA

3

4

5          CERTIFICATE OF OFFICIAL REPORTER

6

7    I, Amy M. Condon, CRR, RPR, CSR, Federal Official Court

8    Reporter, in and for the United States District Court for the

9    Eastern District of North Carolina, do hereby certify that

10   pursuant to Section 753, Title 28, United States Code, that the

11   foregoing is a true and correct transcript of the

12   stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17

18   Dated this 2nd day of April, 2019.

19

20

                              /s/ Amy M. Condon
21                            Amy M. Condon, CRR, CSR, RPR
                              U.S. Official Court Reporter
22

23

24

25